May it please the court, my name is Rob Weinberg, I'm Assistant Attorney General for the Territory of Guam, and I emphasize the word Territory, because the Territory of Guam, the United States Territory of Guam, is not a state, and that's an important factor in this debate that we're going to have today. Well then, let me just ask why. I mean, how does the fact that Guam is a territory and not a state impact our abstention analysis in this case? The underlying reason for this is reinforced by an even more vital consideration, the notion of comity. That is, a proper respect for state functions, a recognition of the fact that the entire country is made up of a union of separate state governments, and a continuation of the belief that the national government will fare best if the states and their institutions are left free to perform their services. We're talking about our federalism, comity, and the notion of our federalism connotes or denotes a concept that is lacking in the territories, and that is an independent sovereignty, respect for the sovereignty of an independent state. Before you go too far, have you considered the case of J.M.M. v. District of Columbia, 378, Fed 3rd, 1117, 2004 case, where the Younger v. Harris abstention doctrine was applied by the district court and found correctly applied in the District of Columbia? Not a state, not a state. What's the difference between that? I would I'm not with that case. Secondly, there's a case of Maimo Melendez versus Alvarez Ramirez applying the Younger abstention doctrine to Puerto Rico. Not a state. Puerto Rico. I can answer a little better. And I'm not familiar with that case, but I am familiar with Puerto Rico. So as I see Younger, whether or not it applies and whether or not we should detain ourselves with Younger, I thought, as you did, that perhaps Younger could be distinguished because Guam is not a state. But if Puerto Rico and District of Columbia qualify for application of the Younger doctrine, why shouldn't we follow those? I don't know about the District of Columbia case. And, Your Honor, if I may, I'd like to reserve at least five minutes at the conclusion of this. And I would have to look at that case. I do know this about the District of Columbia, and that is that it has only those, that independence, shall we say, rather than sovereignty that Congress confers upon it. Puerto Rico is a little different being a commonwealth or calling itself a commonwealth. It is closer to a state. And what separates in the case of, in particular, Puerto Rico from the territory of Guam is that it has a constitution and that Congress authorized it to have a constitution. And it has a constitution. And it has an independent sovereignty, sense of sovereignty to it. One of the most important Eleventh Amendment cases came from Puerto Rico. Puerto Rico has Eleventh Amendment immunity, which is a significant indicia of sovereignty. The territory of Guam does not. Or that's a debatable question. I was going to say, do you have a case in point on that? That hasn't been decided. It has not. You're right. You're right. Yes, Your Honor. And Guam has its own independent system, of course, that's been conferred, very similar to Puerto Rico. It does most recently. It does most recently. It has an independent court system to the degree that Congress has permitted it. And so if you look at House Resolution 2400, which passed last fall, which established actually for the first time a Supreme Court of Guam in the Organic Act of Guam, you see a government structure there. And it is this government structure, though, that is not established by a plebiscite. It's not established by the citizens. It's established by Congress. So in the case of the Attorney General, if I can. What we have here is a conflict between a number of local laws, old local laws, describing what the Attorney General's powers and duties are. And now we have a federal law that says there shall be a chief legal officer for the government of Guam. And what we have is a conflict now between some old local laws and a congressionally established office in the Organic Act of Guam for the government of Guam by the United States Congress. We don't have dual sovereignties like you have in Puerto Rico. And I cannot speak for the District of Columbia and how its corporate structure is set up. I do know this, that in just about every case that I've read recently, between cases decided out of Puerto Rico and cases decided by this court, they never seem to agree on the question of the territories and sovereignties. And I think that I remember seeing a case from the 11th Circuit also that mentions this conflict. So unfortunately, cases from the 4th Circuit for Puerto Rico are kind of bad examples because I just see that the 9th Circuit just disagrees with their reasoning so often. But more importantly than that, Puerto Rico is different. It has a constitution. It's higher along the food chain, shall we say, to statehood. And the case law says that. So it is a different area. Columbia is very much indeed like Guam, because District of Columbia has superior courts in which they deal with felonies and misdemeanors and civil actions. And I totally the creation, totally the creation of Congress. So similar to Guam. So why isn't the District of Columbia case saying specifically the younger extension doctrine in a case involving zoning regulations or sexually oriented business? Right? Excuse me, Your Honor. Is that the case you're referring to from District of Columbia? It's very similar to what you have here. You have a very local issue. Who's going to represent who? And in your case, and there it is, whether you have video stores, audio, video, adult video stores in certain areas. And the district court says we're going to leave that up to the locals. We're going to abstain under younger. Why isn't that exactly the same thing? Oh, it's not. It's not at all, Your Honor. In a case of zoning, and that is a local issue, and zoning, and that would be like. Two construction contracts for the airport. This gentleman wants to be the lawyer for Guam. This gentleman wants to have his own lawyer appointed. It's a very local matter. No, Your Honor, it's not. Why? Because it's an airport? No, because the question is, what does Congress want? Well, let me ask you. Oh, go ahead. Let's finish that, and then I had a question that sort of comes. I'll let you finish that if you'd like. I'm just going to finish that thought, that the question isn't, what do the locals want? What do the people in Guam want? The question is, what does Congress intend? What does Congress intend in amending the Organic Act? Now, let me just say that this issue has indeed gone up in the local court. Well, that's what I want to ask you. What is the impact on this litigation of the Guam Supreme Court's decision in A.V. Guam-Pac-Guam International Airport Authority v. Moylan? Because my understanding is the Guam Supreme Court decided that the AG's authority could be and had been modified by the Guam legislature to allow GIAA to retain its own counsel. Essentially, in other words, it decided the underlying controversy in favor of GIAA. Now, the Guam Supreme Court's decision is subject to review by the Ninth Circuit, by writ, right? Not anymore. Okay, so you didn't do anything about it? No, it's not subject anymore to review by the Ninth Circuit. Just changed. That changed in House Resolution 2400 also. It is now, however, on its way to the U.S. Supreme Court. On May 5th, we filed a petition for certiorari. All right, so could that move the case, depending on what happens there? Because if the Guam courts have jurisdiction, which I don't believe the Attorney General denies, does it follow that regardless of whether the district court should abstain once you have a decision by a parallel local court system and they've issued it and it becomes final, does that take care of this? No, it doesn't. Of course not. But not for the obvious, of course not, okay? No, because I know we don't get two bites at the apple, all right? And I know that the territories are entitled to, or judges from the territories will be entitled to full faith and credit. And so I know that when this case goes back from this court to the district court, depending on what the United States Supreme Court does, it may grant certiorari, it may not. If it does, it may reverse and remand, or it may reverse and render. Whoever wins in that U.S. Supreme Court case, assuming this federal court case here remains pending, is going to be going back to that district court and saying, raise judicata, Your Honor, okay? And that is a question that needs to be answered in the first instance by the district court. And let me explain why it's so important. Because of the mischief of this case. This case, if this court does not reverse and remand and send it back to the district court with instructions to entertain the merits of the case, will set a terrible precedent that any time any civil litigant has a question under the Organic Act, all the federal court defendant has to do is race over to the local court and he will have a local court and file some sort of mandamus petition under local statutes. And then the federal court will abstain. And we can't send that message because, as Your Honor was reading the Supreme Court's opinion, the essence of that Supreme Court opinion is that the local legislature can restrict, alter, modify, or abridge. And those are words from that opinion. The powers and duties of the Office of the Attorney General, which is created by the United States Congress. So the United States Congress creates an office for the government of Guam and says there shall be a chief legal officer for the government of Guam and says nothing else about any legislative authority to restrict or alter or modify or abridge. And these are arguments that are being presented to the U.S. Supreme Court on certiorari. But Congress gives the local legislature no authority to modify, alter, restrict, or abridge the powers and duties of the chief legal officer for the government of Guam. And yet the Supreme Court of Guam, in its infinite wisdom, determined that a local statute controls the interpretation of congressional intent. That cannot be right. But, Your Honor, local courts are given concurrent jurisdiction here. Local courts have concurrent jurisdiction. Are you saying they should not have any jurisdiction over a case such as this, period? No, Your Honor. I'm not saying that. I mean, why is it inadequate to decide these federal questions? I'm not saying they do not have concurrent jurisdiction. I'm not saying that they are presumed incompetent. They are not. They're presumed competent to decide federal questions. What I am saying, though, is that if this discrete abstention question is not resolved by this court and sent back, what you will have is any time any federal, any litigant wants to go to federal court, as is his right to have a federal question decided, he won't get to. Because a clever... Well, that's quite a parade of horribles. Open the flag to it. I'm not really, I'm not quite, you know, I mean, you've said it's going to be horrible, but I'm not really quite following that. I don't know that I agree with... Well, let's take... What's the impact if you lose here? Let's take a side trip on the question of removal jurisdiction, just for example. Why do we have removal jurisdiction in the first place? Let's use an example. You say that an employee claims racial discrimination in employment under Chapter 7 in the U.S. District Court, and the employer goes running over to the Guam local court and says, I want this matter determined here. I want declaratory relief action that I did not engage in racial discrimination. And you say that this case, if not remanded and straight, not a young, younger abstention so that you win, will allow the employer to stop the Title 7 case because it involves a local issue. No. Well, I don't think that's a... I think I can give you a better example than that. Well, but that example is the first one I thought of. You said any case, right? And I'm taking any case. I said, you know, what I said was under the Organic Act, right? I mean, if you can't have a Title 7... So if you have a right of action under the federal legislation but not under the Organic Act, then there won't be the parade of horribles you're talking about. Well, I was keeping my illustration too narrow to the Organic Act. But let me broaden it along the lines of what I think Your Honor is doing. Let's take the example of a lot of local laws involving, let's say where I'm from. I'm from Alabama. We used to have laws on the books, Jim Crow laws. You can decide how much time you want to spend on this, but you're getting close to five minutes. Thank you, Your Honor. I just want to complete the thought here. We had laws on the books, anti-miscegenation laws. We had Jim Crow laws and voting laws. And then the Voting Rights Act came along. Now, would you have someone go to federal court, file an action under the Voting Rights Act, but meanwhile the defendant goes racing over to local court and seeks to enforce a Jim Crow law or something that is a clear violation? No. You can't, right? You get to have your federal forum to decide whether the local laws are in conflict with the federal law because the federal law is supreme. Well, you're assuming that the local courts will not pay attention to the Voting Rights Act. Well, I'm from Alabama. You're assuming that they're incompetent and discriminatory, aren't you? Well, I think that the – I don't want to assume that they're incompetent and discriminatory. I think that the opinion speaks for itself, and I have problems with it. But the fact that they have concurrent jurisdiction over federal questions does not end the inquiry because if it did, every federal case, every case in which a federal question is presented to a federal court, you wouldn't have all this abstention jurisprudence saying quit – saying don't abstain and you have an unflagging obligation to exercise the federal jurisdiction conferred upon you. You wouldn't have it because we have this doctrine of concurrent jurisdiction. We don't need – we don't have to worry about whether we should entertain a federal question. They can handle it just as well. That's not the answer. You stood under the Declaratory Judgments Act, and there's a certain discretion in the trial court to not see – to dismiss the case. I respectfully disagree, Your Honor. I looked at that again very closely last night, and that whole analysis proffered by the airport authorities and by the district court in this case is just wrong. Those cases, the Brilhart case, Diasol, Huff v. Hartford, those all were diversity cases, and the question – and there was a pending state litigation somewhere, and the issues that were pending before the federal court were state law questions. They were not federal questions, subject matter jurisdiction questions. They were questions of state law in a diversity context. Well, why shouldn't we just say that you waived the dismissal under the Declaratory Judgment Act because you didn't even raise it in your opening brief? Well, Your Honor, I've looked at that and looked at that and – And you found it in there? I found what, Your Honor? You found that you raised it in your opening brief? Well, Your Honor, I certainly thought that I had addressed everything in our brief, and I looked at it again, and I keep looking at that order on pages 11 and 12 of the trial judge's order. And I keep looking at it, and what did he say? He says, well, for the reasons I stated earlier in my discussion of Younger and Burford, and here's some Burford, and here's a Brilhart case that I don't even analyze. For those reasons, I'm going to exercise my discretion. And I'll tell you honestly, Your Honor, Brilhart does not apply. And to be honest with this Court, I was so baffled by that approach that I just – I thought the other side was playing games with the judge, and I don't mean to disrespect the other side, but I – Well, that's sort of with all due respect when people say that to the Court, and then you hold back. Well, I mean, there's – When you say someone's playing games, it's hard to say that not to take offense. Well – Okay, well, let's – I'm going to give you two minutes on rebuttal. All right, you've used most of your time, but I'll give you two minutes on rebuttal. Thank you, Your Honor. Thank you. And please, the Court. Randall Todd Thompson representing, in this case, actually Mr. Torres, who was substituted in as the executive manager of the airport authority. Originally, a gentleman named Thompson, no relation, had that position, but that changed, and I think it was by stipulation of the parties. Well, I think you can see that we're all interested in territory and state here, so why don't you give us your best argument on that? Very well, Your Honor. The Guam courts have an important role to play in the shaping of interpretations of the Organic Act, and that's not just me saying that. That's this Court saying it in the Pangolinan case, which we cited in the briefs. Also in the Heiser case, which another panel of this Court addressed a couple of years back, had similar language saying that the local courts of Guam have an important role to play in this process. So not only are the courts to be presumed competent to reach these issues, there's a special place set aside for the local courts, and now we do have a Supreme Court and no more Ninth Circuit review of local court decisions. Which makes it much more like a state. Much more like a state, Your Honor. In fact, we do have a Supreme Court, and I'm no expert on the federal court system applicable in the District of Columbia or the local court system, but I don't believe there is a Supreme Court of the District of Columbia, so we're even one step higher on the pecking order than would be that example. In this case, Your Honor, the Court got it exactly right, the District Court did, because it ascertained, notwithstanding the fact that there is a federal statute, that this is really a question of local application. The Organic Act applies to Guam and nowhere else. Guam is the place where it's interested. That's where people are concerned about this intergovernmental dispute. I doubt that many people are concerned about it outside of the confines of Guam. The District Court recognized that it was a power struggle and that it was a federal statute, but essentially a local concern. Second, the District Court realized that this case involved more than just an interpretation of a federal statute. It involved the interplay between the federal statute on the one hand and five separate local statutes, which recited in the complaint of the Attorney General for declaratory relief in federal court. The court finally noted that, as the predicate to its rulings on abstention in the Declaratory Judgment Act, that there would be an adequate opportunity to litigate the federal issues in the local courts. And that's not just supposition at this point, because we have seen that the Superior Court and now the Guam Supreme Court have passed on these very exact identical issues. Now, the Attorney General obviously is unhappy with the way the Guam courts have resolved the issue. And having said he doesn't want another bite of the apple, the Attorney General, the Assistant Attorney General, seems to be aiming for just that by having this court reverse. The District Court reached the right result for the right reasons. And there are multiple reasons. As the court – as Justice – Judge Callahan indicated in a question, there has been waiver, in our view, of the Declaratory Judgment Act. It was apparently just a slip through the cracks. Perhaps they thought that they had covered it on the analysis for abstention under Younger and Burford doctrines. But they are totally different doctrines. And they're totally different because the standard of review is totally different. The abuse of discretion standard is what applies when a Declaratory Judgment Act issue comes up for the court. It's a higher standard with respect to the abstention doctrines. That's one reason. Also, there is simply no presumption under the Declaratory Judgment Act that there will be jurisdiction. That's a matter that's left to the sound discretion of the lower court. Okay, so if we didn't find it waived, then the standard of review is deferential to the – Very deferential to the District Court. And that was resolved by the recent case law that has come out from the circuit. And there really can be no doubt that these were separate issues. Even the decision itself, the District Court's decision, said three separate and distinct issues. There are three separate headings to the court's decision. And the last of which – So the ruling on that is that the District Court found that there was a parallel local proceeding involving the same issues in parties, right? That's correct, Your Honor. And your position would be that because that's deferential that the AG, even if we did hear that, if we got to that issue, they haven't overcome that standard? Yes. Absolutely nothing has been shown that they have not even engaged in the debate from the briefs or from argument or anywhere in this appeal. Has there been anything put before the court to suggest that the court abused his discretion in abstaining from resolving this essentially local dispute in a federal declaratory judgment action? The only argument that we could conceive would be otherwise is that, well, this wasn't an injunction. This was a declaratory relief. Well, that's not true. This was an injunction action as well as one for declaratory relief. It wasn't an action to enjoin the court proceedings. It was, however, according to the latest jurisprudence under Younger, that's not necessary. You don't have to have an action which directly enjoins the local court proceeding. It's enough that if it's a declaratory judgment action, it has the same effect of enjoining them. And what would have happened in this case is the federal court, if it had proceeded in this case, and if it had ruled in the Attorney General's favor, would have issued an injunction enjoining the very relief that was given by the Superior Court of Guam and subsequently affirmed by the Supreme Court, clearly interfering with what's going on. And so from a Younger perspective, the additional argument, clearly the court was correct in its Younger analysis. May I ask a question about Burford abstention? I think I understand the Younger abstention. Could you indicate why you think the district court was right at Burford? Yes, Your Honor. And I must say, we did not raise the Burford doctrine in our briefs. The court did so sua sponte, and apparently the court was concerned primarily with issues that had been raised in the briefs concerning the collateral issue of sealing the documents. The parties were talking back and forth about, well, can the Attorney General represent everybody but nobody? Can he wear all these hats and at the same time have professional responsibility going on here? So the court said, look, there's a lot of issues raised in this case that have to do with professional responsibility and conduct, which is uniquely a local matter for the Guam Supreme Court and the local courts. That's one dimension of it. The other is what we've seen in some of the more recent cases interpreting Burford, where they talk about where you have a skein of intertwined statutes, local and federal. And I think that's what the court was getting at here, is we have a situation where we have very clear local statutes that say the airport authority shall have the right to have its own private counsel. It says it in several places. Then we have a vague statute passed by Congress, which indicates that the Attorney General is the chief legal officer of the territory of Guam, and arguably some interpretation of that could implicitly repeal those Guam statutes on point. In any event, giving the most charitable reading to that, these are federal and state statutes that seem to be covering the same topic, and the question is, which one's right? They're intertwined. You can't look at one apart from the other. And that's what the court was looking at when it said, this is a hot potato. There's a lot going on here, and it's the local courts that are in the best position to deal with this. And now we see the local courts have dealt with it. Thank you. As far as this, the one matter that wasn't covered initially on our opponent's brief or in oral argument, the matter of sealing the letter that was part of the record, just a few points on that issue. The first is that the sealing of this letter was only temporary for 17 days, and it was only provisional. The Attorney General was given the opportunity to submit a redacted version of the letter, which the Attorney General did. If I can draw the Court's attention to Supplemental Excerpts of Record 49, they had redacted the very language in there that supposedly was the non-privileged information. Is this moot at this point, or is it even relevant anymore? Your Honor, we argued in our brief that, in fact, it is moot and is irrelevant at this point because the document is no longer sealed, a redacted version of it has been filed, and it's the redactions that they themselves agreed to. So, yes, indeed, we think it's a moot issue. I just wanted to toss that in for the sake of completeness. With respect to our cross-appeal, we're content to rest on the briefs on that issue. It's really a third-tier issue. The real issue here, the real issues, as we've been discussing, are Declaratory Judgment Act, Burford, and Younger abstention. If any one of those three grounds is sustainable in the district court, then the district court's decision should be affirmed. We think all three of them should be sustained by the court, and for very compelling reasons in the case of the Younger doctrine, and in particular the Declaratory Judgment Act. This is a very clear case under the Declaratory Judgment Act where the court, in exercise of its sound discretion, as the trial court said, this is not the kind of case that should be heard in federal court. And that's the language the court used in his decision. This is an intergovernmental power struggle dispute that involves uniquely local issues. Yes, there's a federal statute involved, but these are local issues, local concerns, and we've got a local Supreme Court now that can make these decisions here in light of our local statutes, which the local courts have a particular familiarity with. They deal with them all the time, and they'll be answering for the consequences when perhaps other cases come up with raising similar issues. So for a host of reasons, the district court did the right thing for the right reasons. Three of those reasons, any one of those three, is sufficient to sustain the judgment of the court below, and we ask that the court affirm. Are there any questions? There don't appear to be further questions. Thank you for your comments, counsel. Thank you, Your Honor. You have two minutes. First, I want to point out that the Pangolini case and the other cases we've pointed this out in the briefs, this court may have deference to the Supreme Court of Guam in interpretation of local laws. This court and no court has ever said that this court or a federal district court should defer to the Supreme Court of Guam on an interpretation of federal law, and that is what we're talking about here. You can put the court before the horse all you'd like, but what we're talking about is what Congress intended. Now, if we have a statute that authorizes the airport authority, a local statute, to hire its own counsel, then we have to answer the question first, did Congress intend for the Attorney General to be the chief legal officer for the government of Guam and all of its autonomous agencies, and have control, and therefore, does that statute, is it in conflict? Then we reach the question, is it in conflict? But first we must answer the question, the federal question, what did Congress intend by the term chief legal officer? Let me point out, I want to say that on the Burford, this is not a Burford case. There is no complex legal state laws that are complex, like oil and gas laws or water rights or that, that you would find in a typical Burford abstention case. In this court, in United States v. Morris, which is cited in the briefs, said that when you have cases where you have a number of state law or local law statutes that may be in conflict with a federal law, so you've got a supremacy clause issue or a preemption issue, that's a federal question for federal courts to decide. State courts don't have any special competence. I think that was the phrase from it in U.S. v. Morris. This is not a Burford case. There's other arguments in here, but there's not Burford. If anything, it would be closer to maybe Pullman, but I see my time is up, and I wish I had a lot more because I have much more to say. Thank you. This matter will stand submitted. The court will stand in recess until tomorrow morning.
judges: D.W. Nelson, Callahan, Bea